**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Green Party, an Arizona political party, et al., | No. CV10-1902 PHX DGC |
| Plaintiffs, | **ORDER** |
| vs. | |
| Ken Bennett, in his official capacity as Secretary of State for the State of Arizona, | |
| Defendants. | |

Plaintiffs Arizona Green Party ("AGP") and Claudia Ellquist, a co-chairwoman of AGP, ask the Court to enter a temporary restraining order prohibiting nine candidates from appearing on the ballot for the November 2, 2010 general election as AGP candidates.[1] Plaintiffs also ask the Court to enjoin the State and County Defendants from printing ballots that show the alleged sham candidates as candidates affiliated with AGP for the November 2010 election. Plaintiffs allege that the nine candidates are not true members of AGP, but are persons who registered with AGP, applied to run as write-in candidates, and obtained one or more write-in votes in the August primary election solely for the purposes of appearing as AGP candidates in November and thereby drawing votes away from the Democratic Party.

---

[1] Plaintiffs' motion initially requested this relief with respect to two additional candidates, but Plaintiffs' counsel informed the Court at the September 9, 2010 hearing that they were withdrawing their claims against Matthew Shusta and Michelle Lochman.

1 Plaintiffs assert that their constitutional rights will be violated if they are forced to associate on the publicly-disseminated ballot with individuals who do not represent their views and are not legitimate candidates for their party.

Plaintiffs' action was filed on Labor Day, September 6, 2010. Notice was given to Defendants. The Court held a hearing on September 9, 2010. Prior to the hearing, many of the County Defendants moved to dismiss Plaintiffs' complaint on the basis of laches. These Defendants contend that Plaintiffs delayed the filing of this case unreasonably and thereby imposed substantial prejudice on the County Defendants. The moving Defendants contend that they must begin printing ballots tomorrow morning, and that any delay in printing could jeopardize their ability to comply with state and federal laws and cost hundreds of thousands of dollars in emergency printing expenses. Doc. 16.

For reasons that follow, the Court will deny the County Defendants' motion to dismiss this case on the basis of laches. The Court will also deny Plaintiffs' request for a temporary restraining order.

**I.　Laches.**

To establish the defense of laches in an election case, a defendant must show that the plaintiff unreasonably delayed the filing of the action, resulting in prejudice to the defendant. *Lubin v. Thomas*, 144 P.3d 510, 512 (Ariz. 2006). Defendants have not shown that Plaintiffs unreasonably delayed the filing of this action.

Defendants point to various items of evidence in the already-substantial record to suggest that Plaintiffs were on notice of this claim in late July or early August. In reviewing each of those items of evidence, however, the Court cannot conclude that Plaintiffs had sufficient information to assert this claim. Although it is true that some individuals who may not have been directly affiliated with AGP began collecting some information about the alleged fraudulent scheme in late July and early August, Defendants have presented no evidence that this information was known to or clearly understood by Plaintiffs. Allegations of fraud by the alleged sham candidates were set forth in a letter from counsel for the Democratic Party to various law enforcement officials on August 30, 2010. Doc. 4-1.

Plaintiffs' counsel was contacted by AGP on September 2, 2010, and informed that attorneys contacted the previous week were unable to represent AGP due to a conflict. Plaintiffs' counsel prepared and filed this lawsuit four days later, on September 6, 2010.

This is not an election challenge that requires counting votes, checking signatures, or looking for procedural irregularities. This claim is based on an allegation of fraud, and required the gathering of significant evidence concerning the alleged sham candidates, their registration histories, and other evidence to suggest they were enlisted by non-AGP individuals to register as possible write-in candidates for AGP. The Court is not persuaded that such evidence was readily available to Plaintiffs in late July or early August, nor that it could have been gathered easily. It appears that Plaintiffs acted promptly upon learning of the evidence from various sources. The Court therefore cannot conclude that Plaintiffs delayed unreasonably, and will not dismiss all or a portion of this case on the ground of laches.

**II.     Temporary Restraining Order.**

To obtain a temporary restraining order, Plaintiffs must establish that they are likely to succeed on the merits, that they are likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in their favor, and that an injunction is in the public interest. *Alliance for the Wild Rockies v. Cottrell*, ___ F.3d ___, 2010 WL 2926463, *3 (9th Cir. 2010). The test includes a sliding scale. If Plaintiffs show that the balance of hardships will tip sharply in their favor, they need not make as strong a showing of the likelihood of success on the merits – the existence of serious questions will suffice. *Id*. at *4, 7.

The Court concludes that Plaintiffs have not shown a likelihood of success on the merits. Nor have they shown that the balance of hardships tips sharply in their favor, justifying temporary injunctive relief merely on a showing of serious questions.

**A. Likelihood of Success on the Merits.**

**1. First Amendment.**

Plaintiffs challenge the facial and as-applied constitutionality of A.R.S. § 16-645(D), a provision that permits candidates from minor political parties to appear as party candidates on a general election ballot if they receive a plurality of the write-in votes in a primary election. Plaintiffs claim that this provision allows individuals such as the alleged sham candidates to appear as AGP candidates in November merely by changing their party registration to AGP, applying as write-in candidates in a primary election where no other AGP candidate is running, and writing in their own name. A single vote is sufficient to ensure their appearance as an AGP candidate under § 16-645(D) if no other AGP candidate receives votes.

Plaintiff contends that this provision burdens their First Amendment associational rights by requiring them to associate with candidates who do not represent their views or objectives. Relying on *California Democratic Party v. Jones*, 530 U.S. 567 (2000), Plaintiffs contend that such a burden on freedom of association can survive only if it passes strict scrutiny – only if Defendants can show that the provision serves a compelling state interest and is narrowly tailored to its achievement.

The Court is not persuaded, however, that every impingement on associational freedoms requires strict scrutiny. When determining whether a state electoral statute imposes an unconstitutional burden on a political party's fundamental rights, a court must consider the severity of the burden in deciding what level of scrutiny to apply. *See Burdick v. Takushi*, 504 U.S. 428, 433-34 (1992) ("the mere fact that a State's system 'creates barriers … does not of itself compel close scrutiny.'" (quoting *Bullock v. Carter*, 405 U.S. 134, 143 (1972)); *see also Crawford v. Marion County Election Bd.*, 553 U.S. 181, 191, 197 (2008) (plurality noting that "*Burdick* [did not] identify any litmus test for measuring the severity of a burden that a state law imposes on . . . a political party" and declining to apply strict scrutiny).

In *Jones*, the Supreme Court applied strict scrutiny to strike down California's blanket primary system because the burden it placed on a party's associational rights was severe. The California system potentially required parties to accept as their standard bearers candidates elected in the primary by members of opposing political parties. *Id.* at 579 (framing the context as a "[primary] election in which the party nominee is selected by nonparty members"). The severity of the burden placed on Plaintiffs by § 16-645(D) is not as severe. The statute does not force AGP to accept candidates elected by members of other political parties. Only AGP members may run for office as an AGP candidate and only AGP members and unaffiliated voters can vote for the candidates in the primary. The statute further provides that the winning candidate in an AGP primary must obtain a plurality of the votes of AGP voters, ensuring that party voters decide the issue.[2] Thus, the statute results in AGP being required to accept only registered AGP members as candidates, and only when they have received a plurality of the votes cast by other AGP members. While it is true that the statute might require AGP members to associate with candidates who do not share their views, that is not uncommon in political parties. Candidates running under a particular political party name often disagree with the party on significant issues. Party leaders often must tolerate candidates who do not fully share the party views or do not embrace them as vigorously as party leaders would like. Such dissonance is common in the American party system, and the Court simply cannot conclude that such a burden in this case is so severe as to invoke strict scrutiny.

Plaintiffs have not shown they are likely to succeed if a lower level of scrutiny is applied. They have not addressed a lower level of scrutiny. Moreover, the policy reasons behind § 16-645(D) are evident – to allow minority parties to place candidates on the ballot without the substantial number of votes required for major parties. The statute increases access to elections for parties such as AGP, a clearly desirable goal. Given this evident

---

[2] Although it is true that the Arizona statutory scheme allows individuals to change parties shortly before a primary election as the candidate Defendants allegedly did here, Plaintiffs do not challenge that provision of Arizona law.

purpose of the statute, the Court cannot conclude that a lower level of scrutiny will result in the Court finding that it violates Plaintiffs' First Amendment rights.

### 2. Equal Protection.

The Court's conclusion with respect to Plaintiff's equal protection challenge is similar. Plaintiffs complain that § 16-645(D) permits individuals to appear as AGP candidates with only a single write-in vote, while § 16-645(E) protects larger parties from rogue or sham candidates by requiring candidates to obtain a significantly higher number of votes. Plaintiffs characterize this as a higher level of protection, and argue that their different treatment violates their rights to equal protection.

Even if the Court were to agree that this constitutes a different level of treatment,[3] it cannot conclude that strict scrutiny is required. In the Court's view, § 16-645(D) does not deny Plaintiffs a fundamental right. They retain their right to vote, their right to speak, their right to campaign and organize. Although the statute arguably burdens their associational rights by requiring them to tolerate candidates they do not support, that burden, as discussed above, is not uncommon in political parties. The Court cannot conclude that such a burden so impairs a fundamental right as to warrant strict scrutiny under equal protection analysis. And as noted above, if strict scrutiny is not applied, Plaintiffs have not shown they are likely to succeed on the merits.

### 3. Due Process.

As with their First Amendment claim, Plaintiffs argue that § 16-645(D) so burdens their associational rights and their right to vote as to require strict scrutiny. For reasons explained above, the Court is not persuaded. And without strict scrutiny, Plaintiffs have not shown that are likely to succeed on the merits.

---

[3] As noted above, the intent of § 16-645(D) is to increase AGP's access to the ballot. The Court is not persuaded the higher threshold for larger parties in § 16-645(E) can rightly be characterized as a protection; it seems more appropriately viewed as a restriction.

### 4. Arizona Constitution Article 7, Section 12.

Article 7, Section 12 of the Arizona Constitution requires that the laws of Arizona secure the purity of elections. The provision is titled "Registration and Other Laws," and states: "[t]here shall be enacted registration and other laws to secure the purity of elections and guard against abuses of the elective franchise."

Plaintiffs contend that § 16-645(D) violates this constitutional provision by permitting the kind of sham-candidate tactics that have occurred in this case. By allowing individuals to become candidates for a minority party on the basis of a single write-in vote, Plaintiffs contend that the statute does not ensure the purity of elections, but instead invites fraud.

Plaintiffs rely on *Griffin v. Buzard*, 342 P.2d 201 (Ariz. 1959). In *Griffin*, the Arizona Supreme Court stated that "courts must be alert to preserving the purity of elections and [their] doors must not be closed to hearing charges of deception and fraud that in any way impede the exercise of a free elective franchise. The contestors are entitled to an opportunity to prove their charges." *Id*. at 205-206. This statement, which is the only discussion in the case related to Article 7, Section 12, does not grant Plaintiffs a private right of action in this setting, nor does it suggest that courts should strike down a single provision of Arizona's statutory scheme regulating elections without considering the legislature's actions as a whole. Article 7, Section 12 charges the legislature with ensuring the purity of elections. The legislature has done so by enacting a host of statutes regulating the timing, process, and conduct of elections, as well as criminal statutes prohibiting election fraud. Indeed, the parties have advised the Court that an action was filed in Arizona state court yesterday challenging some of the alleged sham candidates on the basis of election fraud. The Court cannot conclude that § 16-645(D), viewed in isolation, is sufficient to conclude that the legislature has failed to secure the purity of elections and guard against abuses of the elective franchise.

Plaintiffs also cite *Chavez v. Brewer*, 214 P.3d 397 (Ariz. Ct. App. 2009). *Chavez* held that the Secretary of State's choice of voting machines could not be attributable to a failure of the legislature to enact laws necessary to secure the purity of elections. The case

says nothing about the kind of arguments Plaintiffs assert here. If anything, *Chavez* confirms that a violation of Article 7, Section 12 could be found only if the Court found that "the legislature, our law-making body," failed "to enact necessary laws to secure the purity of elections." *Id*. at 407. Plaintiffs have not made such a showing by their isolated focus on § 16-645(D).

### 5. Arizona Criminal Laws.

Plaintiffs argue that they are entitled to relief because the alleged sham candidates violated two criminal statutes, A.R.S. §§ 16-1006 and 16-1013. But the Court is not persuaded that Plaintiffs may assert a private right of action under these criminal statutes. In Arizona, one may not infer a private cause of action "based on a criminal statute where there is no indication whatsoever that the legislature intended to protect any special group by creating a private cause of action by a member of that group." *Phoenix Baptist Hosp. & Med. Ctr. v. Aiken*, 877 P.2d 1345, 1350 (Ariz. Ct. App. 1994) (quotation marks and citation omitted). Plaintiffs have made no such showing with respect to §§ 16-1006 and 16-1013.

Plaintiffs rely on *Griffin v. Buzard*, 342 P.2d at 201, to argue that they may assert a claim under these statutes, but *Griffin* concerned a claim under Arizona's election contest laws. *Id*. at 203. It did not hold that Plaintiffs may assert a private cause of action in a lawsuit not brought under election contest statutes.

### B. Balance of Hardships.

The hardship to be experienced by Plaintiffs if the Court does not prohibit the alleged sham candidates from appearing on the November ballot is discussed above – Plaintiffs will be forced to associate with candidates that do not share their political views and objectives. The Supreme Court has noted that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976). As also discussed above, however, the burden to be placed on Plaintiffs by the appearance of the alleged sham candidates on the ballot is not unlike the burden frequently encountered by political parties. Candidates often run for office as members of particular political parties whose views they do not wholly embrace. The Court

1 cannot conclude that such a hardship is akin to that experienced by political parties in *Jones* and similar cases.

On the other side of this case, Defendants will experience hardship if the temporary restraining order sought by Plaintiffs is granted. The candidate Defendants will be deprived of their right to appear on the November election ballot without any election fraud having been proved. Counsel for one of the candidates appeared at the hearing on September 9, 2010 and asserted that the candidate genuinely believes in AGP principles and desires to run as an AGP candidate, but lacks the funds to mount a significant legal challenge to preserve his place on the ballot.

The County Defendants will also suffer hardship. As demonstrated in the County Defendants' motion to dismiss, printing contracts for the November election ballots were executed months ago. Ballot printing must begin tomorrow, and any delay in the process may eliminate the County Defendants' ability to comply with federal and state election laws and require them to incur hundreds of thousands of dollars in unanticipated expenses. Doc. 16. Although this problem arguably could be avoided if the Court were to enter a final decision today, any ruling by the Court on the request for a temporary restraining order will not be final. Temporary restraining orders have a life of ten days. *See* Fed. R. Civ. P. 65. A preliminary injunction hearing would be required sometime in the next few weeks, after Plaintiffs have conducted their requested expedited discovery. *See* Doc. 5. Until the preliminary injunction question is decided, the County Defendants would not know whether the temporary restraining order would continue in effect or would expire after the preliminary injunction hearing, and therefore would not know whether to eliminate the alleged sham candidates from the November ballots. If the County Defendants did eliminate the sham candidates from the ballots on the basis of today's ruling and the Court concluded after expedited discovery and another hearing that preliminary injunctive relief is not warranted, the County Defendants would be required to reverse course and place the alleged sham candidates back on the ballot, risking violation of state and federal election laws and likely incurring significant costs in the process.

Balancing the hardship to be experienced by Plaintiffs if a temporary restraining order is denied against the hardship to be experienced by Defendants if such an order is entered, the Court cannot conclude that the balance tips sharply in Plaintiffs' favor. As a result, temporary injunctive relief may not be entered on the basis of Plaintiffs' having raised serious questions – Plaintiffs must show a likelihood of success on the merits. *Alliance for the Wild Rockies*, ___ F.3d ___, 2010 WL 2926463 at *4, 7. Because they have not done so, the request for a temporary restraining order will be denied.

**IT IS ORDERED:**

1. Plaintiffs' motion for temporary restraining order (Doc. 4) is **denied**.

2. County Defendants' motion to dismiss (Doc. 16) is **denied**.

3. By the close of business on **Monday, September 13, 2010**, Plaintiffs and Defendants shall file short memoranda setting forth their proposals on how this case should proceed. The parties should address Plaintiffs' request for expedited discovery and propose a schedule for hearing Plaintiffs' motion for a preliminary injunction.

DATED this 9th day of September, 2010.

_____
David G. Campbell
United States District Judge